# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | | |
|---|---|---|
| MAYNARD SANDERS, | ) | |
| Movant, | ) ) ) | |
| v. | ) ) | CV419-218 |
| | ) | CR416-358 |
| UNITED STATES OF AMERICA, | ) ) ) | |
| Respondent. | ) | |

## **REPORT AND RECOMMENDATION**

Convicted after a jury trial of five counts of bank fraud, five counts of aggravated identity theft, and five counts of aiding and abetting theft by a bank employee, Maynard Sanders was sentenced to 186 months' imprisonment. Doc. 60 (Jury Verdict); doc. 69 (Judgment).[1] The sentence was affirmed on appeal. Docs. 86 & 87 (opinion and mandate of Eleventh Circuit affirming judgment). Sanders now moves to vacate his sentence under 28 U.S.C. § 2255, challenging the calculation of a sentencing enhancement, whether the government had sufficient facts to convict him of aggravated identity theft and aiding and abetting, and raising claims of prosecutorial and judicial misconduct. Doc. 94 at 22-23. The

---

[1] Unless otherwise noted, citations are to the criminal docket Case No. CR416-358.

Government moves to dismiss his motion, arguing that it is without merit. Doc. 91. Sanders has filed a response in opposition. Doc. 92. The motion is thus, ripe for review.[2]

## BACKGROUND

Sanders' indictment charged fifteen federal crimes stemming from a racket wherein he seduced two Wells Fargo bank tellers and convinced them to provide him with confidential information from at least two bank accounts. Doc. 80 at 213-17; Govt. Trial Exh. 13, p. 7, items 168-170; p 23-24, items 567-605; Govt. Trial Exh. 11, p. 7, items 165, 168, 172-74; p. 13, items 333, 335, 338, 342.) He then arranged for these tellers to allow him to make fraudulent withdrawals from the accounts. Doc. 80 at 190-94, 216-17, 221. Govt. Trial Exh. 13 at 27, items 676-96.) He would arrange a time with the tellers by phone or text message and then provide the teller with a withdrawal slip in the name of his victim. Doc. 80 at 190-94, 216-17, 221. Govt. Trial Exh. 13 at 27, items 676-96.) He would pass the slip to the teller and the teller would make a (relatively) small withdrawal from the accounts. *Id.* Sanders would provide a portion of

---

[2] Due to docketing inconsistencies the filings are out of order. *See* doc. 93.

that money to the teller as a kickback.  Gov't Trial Exh. 11, p. 8, item 189; p. 9, item 237; p. 13, item 331-42; p. 14, item 353, 372; p. 16, items 413, 426; p. 18, item 465. Govt. Trial Exh. 13, page 27, item 678; p. 29, items 750-51; p. 32, item 822.)

There was significant evidence against Sanders.  In addition to the testimony of 7 witnesses (including the two bank tellers who made the withdrawals for Sanders), the Government also provided fourteen exhibits.  These exhibits included the records of text messages exchanged with the tellers as well as testimony from bank investigators and law enforcement.  The jury deliberated for 41 minutes before determining that defendant was guilty on all 15 counts. Doc. 81 at 55.

On appeal, Sanders argued only that the district court erred in calculating his intended loss at $480,000 and in applying a resulting 12-level increase to his total offense level, under the United States Sentencing Guidelines.  Doc. 86 at 2.  The Court of Appeals for the Eleventh Circuit determined that "a defendant 'pays the price for the ambition of his acts, not their thoroughness.'"  *Id.* at 4 (*quoting United States v. Patterson*, 595 F.3d 1324, 1327 (11th Cir. 2010)).  The court noted that while the trial record did not "contain any direct evidence of

Sanders' intent – the main issue on appeal – the district court's finding was supported by sufficient circumstantial evidence," that plaintiff intended to steal far more than he actually received. *Id.* at 5. The court noted that the fact that Sanders stole by manipulating bank tellers who withdrew from the scheme, did not alter this determination because he made repeated attempts to win those tellers back to take more money from his victim's accounts. *Id.* at 6. Ultimately, the court concluded that "nothing in the record leads to the 'definite and firm conviction' that the district court made a mistake in concluding that Sanders had access to the entire $480,000 balance of [the victim's] account, and that he intended to take that much money. *Id.* (citations omitted). The court considered no additional arguments by Sanders because he did not raise any.

## ANALYSIS

Plaintiff now seeks to unwind his conviction. To that end, he raises four claims. First, that the Court incorrectly increased his offense level by 12 and did so without an independent factual determination by the jury that his intent was to withdraw $480,000 from the victim's account. Doc. 94 at 22. Second, he argues that the Government lacked sufficient

facts and evidence to support his conviction for aggravated identity theft because he was charged in his indictment with defrauding Wells-Fargo, not the victim. *Id.* Third, he claims that the Government failed to prove that he aided and abetted anyone other than Wells Fargo because no one else is listed in his indictment. *Id.* at 23. Finally, he claims that the Assistant United States Attorney made prejudicial comments to the jury during closing arguments and that the Judge also ordered the jury to find him guilty. *Id.*

### A. Procedural Default

Sanders' last three claims are procedurally defaulted. A prisoner seeking collateral relief "must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). Generally, where a movant seeks collateral relief based on trial errors to which no contemporaneous objection was made, *id.* at 167-68, or on direct appeal, "it will be procedurally barred in a § 2255 challenge." *United States v. Montano*, 398 F.3d 1276, 1279-80 (11th Cir. 2005) (citing *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994)). "A ground of error is usually 'available' on direct appeal when its merits can be reviewed without further factual development." *Mills*, 36 F.3d at 1055. In other words, a movant may not use his collateral

attack as a "surrogate for a direct appeal." *Lynn v. United States*, 365 F.3d 1225, 1232. (11th Cir. 2004) (cite omitted). A procedural default may be overcome if the movant can show "cause excusing his failure to raise the issue previously and prejudice from the alleged error." *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000) (citations omitted). Ineffective assistance of counsel (IAC) "may satisfy the cause exception to the procedural bar," though such a claim "must have merit" to qualify. *Id.* at 1344 (citations omitted).

Sanders readily admits that his second, third, and fourth claims were *not* raised on appeal. *See, e.g.,* doc. 94. Moreover, he provides no justification for that failure – at all – at least as to his third and fourth claims. Thus, these claims are procedurally defaulted and should be **DISMISSED**.

Sanders makes at least a passing attempt at putting fault on his appellate attorney for failing to raise his second claim. Specifically, in response to the question "[i]f you did not raise this issue in your direct appeal, explain why," Sanders claimed, "counsel fail to raise this issue." Doc. 94 at 5. However, plaintiff neither provides a sufficient factual basis to allow this claim to continue, nor would he succeed on the merits if he had.

"To prevail on a claim of ineffective assistance of counsel, a prisoner must prove that his counsel rendered deficient performance and that he was prejudiced by the deficient performance." *Castillo v. United States*, 816 F.3d 1300, 1303 (11th Cir. 2016) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland,* 466 U.S. at 690. "For performance to be deficient, it must be established that, in light of all the circumstances, counsel's performance was outside the wide range of professional competence." *Putman v. Head*, 268 F.3d 1223, 1243 (11th Cir. 2001). As this court has put it bluntly, "[a] typical IAC claim succeeds only where counsel has, metaphorically speaking, shot at the side of a barn yet missed." *See Lovett v. United States*, 2018 WL 4494201, at *4 n. 3 (S.D. Ga. Apr. 23, 2018) (citing *Sullivan v. Sec'y, Fla. Dept. of Corr.*, 837 F.3d 1195, 1205-06 (11th Cir. 2016).

As to the prejudice prong, a defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Matire v. Wainwright*, 811 F.2d 1430, 1434 (11th Cir. 1987)

7

(same); *See also Butcher v. United States*, 368 F.3d 1290, 1293 (11th Cir. 2004) ("[A]ttorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some *conceivable* effect on the outcome of the proceeding is insufficient to show prejudice.").

Sanders argues that the Government failed to provide any facts or evidence that he used another person's identification to obtain funds from the victim's account in prosecuting him for aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1). Doc. 94 at 22. He also argues that the indictment is somehow defective because it did not specifically identify a person but rather identified Wells Fargo (which is obviously, not a flesh and blood person). As to the first claim, it is simply incorrect. The Government presented multiple witnesses and exhibits to show that plaintiff did indeed use personally identifying information of other people to gain access to funds held in those other individuals accounts. *See, e.g.,* doc. 91 (listing the various pieces of evidence supporting the Government's case). Sanders' position is therefore, meritless.

As to whether the indictment identifies the correct "victim," this argument too is meritless. As an initial matter the indictment charges Sanders as follows:

> On or about the following dates, in Chatham County, within the Southern District of Georgia, and elsewhere, Defendant **MAYNARD SANDERS**, aided and abetted by others, did knowingly possess and use, without lawful authority, the means of identification of another person, that is, the name, signature, bank account number, and driver's license number of S.R., during and in relation to felony violations of Title 18, United States Code, Section 1344, specifically, Bank Fraud, as described in Counts One through Five of this Indictment.

Doc. 1 at 2. Thus, contrary to Sander's position, it does in fact identify a "real person" namely S.R whose identity Sanders stole in order to perpetrate bank fraud.[3] As to the naming of Wells Fargo in the indictment, the statutory provision under which Sanders was charged, 18 U.S.C. § 1028A(a)(1), states that

> Whoever, during and in relation to any felony violation enumerated in subsection(c), knowing transfers, possesses, or uses, without lawful authority, a means of identification of another person or a false identification document shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years.

---

[3] S.R. are the initials of Shirley Ray, one of the elderly individuals whose account was target by Sanders.

9

The relevant subsection allows includes, "any provision contained in chapter 63 (relating to mail, bank, and wire fraud)." 18 U.S.C. §1028A(c)(5). As the Government points out, it is not an element of the crime of aggravated identity theft that the victim be the same person (or in this case entity) that is defrauded. Doc. 91 at 8. As a result, the fact that the bank is not a natural person is irrelevant to the determination of the accuracy of the indictment. Conviction under the statute requires evidence that the movant committed bank fraud. That evidence was ripe here. Accordingly, there was no error in movant's counsel failing to raise this issue on appeal because there was no merit to the claim. Accordingly, there was no ineffective assistance of counsel to excuse the procedural default.

**B. Ground One**

Plaintiff's only remaining unbarred claim is that his sentence is invalid because the jury did not find beyond a reasonable doubt the facts necessary to support a 12-level enhancement under U.S.S.G § 2B1.1(b).[4] As with the claim movant raised above, his objection lacks merit, because

---

[4] Movant raised a *slightly* different claim during his direct appeal. However, it is sufficiently similar to the claim he raises here that it is not procedurally defaulted. Regardless, as explained below, the claim lacks merit.

what he argues is an element of the offense– requiring a jury finding beyond a reasonable doubt – is merely a factor which guides the Court in its determination of sentence.  The Eleventh Circuit has explained that

> [t]he district court is required "to make independent findings establishing the factual basis for its Guidelines calculations." [Cit.] It may base these findings on " ' among other things, evidence heard during trial, undisputed statements in the PSI, or evidence presented during the sentencing hearing.' " [Cit.]

*United States v. Newton*, 559 F. App'x 902, 914 (11th Cir. 2014).

When a district court calculates loss for sentencing purposes, it "looks to the greater of actual loss or intended loss."  *United States v. Souffrant*, 517 F. App'x 803, 823 (11th Cir. 2013) (citing *United States v. Willis*, 560 F.3d 1246, 1250 (11th Cir. 2009).  "Intended loss" (as this is what was applied in movant's case) is "the pecuniary harm that was intended to result from the offense." U.S.S.G. § 2B1.1, cmt. (n.3(A)(ii)).  However, "[b]ecause a defendant's intent is often difficult to prove, it may be inferred from circumstantial evidence." *Souffrant*, 517 F. App'x at 823 (citing *Willis*, 560 F.3d at 1250).  In short, there is no obligation under the sentencing guidelines for a *jury* to make a factual finding as to the loss amount.  Moreover, the Government need only produce evidence that is "sufficiently specific and reliable to meet its burden of establishing the

11

amount of loss by a preponderance of the evidence." *Souffrant*, 517 F. App'x at 824. Impossibility is not a limit on the amount of intended loss. *See, e.g., United States v. Geevers*, 226 F.3d 186, 195 (3d Cir. 2000) (citing *United States v. Klisser*, 190 F.3d 34, 36 (2d Cir. 1999 (per curiam); *United States v. Blitz*, 151 F3d 1002, 1010 (9th Cir. 1998) *United States v. Studevent*, 116 F.3d 1559, 1563 (D.C. Cir. 1997); *United States v. Wai-Keung,* 115 F.3d 874, 887 (11th Cir. 1997); *United States v. Galraith,* 20 F.3d 1054, 1059 (10th Cir. 1994); *United States v. Watkins*, 994 F.2d 1192, 1196 (6th Cir. 1993)).

Here, the probation officer provided evidence of Sanders' desire to maximize his theft from the various Wells Fargo accounts he had access to including his repeated requests to the tellers to acquire more cash. *See, e.g.,* doc. 91 at 4-5. Thus, not only was there no obligation for a jury to find beyond a reasonable doubt the intended loss in this case, but also there is no indication that the District Judge committed error when assigning the higher loss value – even if it was likely impossible for Sanders to have taken that amount, due to the likelihood that the scheme would have been discovered.

## CONCLUSION

For the foregoing reasons, the Government's motion should be **GRANTED**, and Sander's motion should be **DISMISSED**. Applying the Certificate of Appealability (COA) standards set forth in *Brown v. United States*, 2009 WL 307872 at * 1-2 (S.D. Ga. Feb. 9, 2009), the Court discerns no COA-worthy issues at this stage of the litigation, so no COA should issue either. 28 U.S.C. § 2253(c)(1); Rule 11(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts ("The district court *must* issue or deny a certificate of appealability when it enters a final order adverse to the applicant") (emphasis added). This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED,** this 2nd day of September, 2020.

_/s/ Christopher L. Ray_
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA